IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIE ROUTH, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 07-cv-316 |
| | ) |
| v. | ) |
| | ) Judge Kim R. Gibson |
| MICHAEL OWENS et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Richard C. Naugle, Sr.'s Motion for Summary Judgment (Doc. No. 19). Plaintiff has filed a Response (Doc. No. 25). For the reasons set forth below, the Court will deny Defendant's motion for summary judgment.

### I.  JURISDICTION

Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as Plaintiff is a resident of Ohio and Defendant is a resident of Florida, and the amount in controversy exceeds $75,000.00. Venue is proper because this case arose from events that occurred in Somerset County, in the Western District of Pennsylvania.

### II.  FACTUAL BACKGROUND

Plaintiff Jamie Routh brought this action against Defendants Richard C. Naugle, Sr.[1], and Richard E. Stahl, after suffering injuries on the Naugle Farm during the 78th Heinrich Stahl Reunion. Routh alleges one count of negligence against each Defendant.[2]

---

[1] Richard C. Naugle, Sr., is now deceased. His interests are represented by Michael A. Owens.

[2] Defendant Stahl has also filed a Motion for Summary Judgment (Doc. No. 30) that is not addressed in this Memorandum Opinion.

1

The following facts are undisputed and drawn from Naugle's Concise Statement of Material Facts ("Def.'s CSMF"). Jamie Routh suffered her injuries while riding a John Deere Gator (the "Gator") on July 20, 2003, on the Naugle Farm. (Def.'s CSMF ¶¶ 1, 3.) Kristen and Elizabeth Adkins, who were attending the Stahl Family Reunion with their mother Cynthia Stahl, invited Jamie Routh to come with them. (*Id.* ¶ 2.) Defendant Richard E. Stahl organized the reunion. (*Id.* ¶ 4.) Naugle offered his farm for the reunion for no compensation.[3] (*Id.* ¶¶ 5, 6.)

The Naugle Farm covers 138 acres in Somerset County, PA. (Reunion Invitation, Def.'s CSMF Ex. E.) The reunion was held from July 6 to July 20, 2003. *Id.*

Routh and the Adkins sisters found out about the Gator during a tour of the farm. They took the Gator out on July 19, 2003, with no problems. (*Id.* ¶ 17.) On July 20, 2003, the Adkins sisters, Jamie Routh, and Angela Walker went for a ride on the Gator. Elizabeth Adkins was the driver. (*Id.* ¶¶ 18 (identities of riders not disputed), 20, 25.) The vehicle overturned, and Routh suffered injuries. (*Id.* ¶ 12.)

### III. STANDARD OF REVIEW

The Court will grant summary judgment to the moving party pursuant to Fed.R.Civ.P. 56(c) only where "it is demonstrated that there exists no genuine issue as to any material fact." *Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986)). All inferences are drawn in favor of the nonmoving party. *Troy Chem. Corp.*, 37 F.3d at 126. "An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Troy Chem. Corp.*, 37 F.3d at 126 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[3] Naugle is related to the Stahls through his mother. (Pl.'s Resp. Ex. 4 at 2.)

## IV. DISCUSSION

### A. Immunity under RULWA

Naugle claims he enjoys limited liability because his farm meets the requirements of the Recreational Use of Land and Water Act (RULWA). (Def.'s Br. 3-12.) Under RULWA, subject to certain exceptions, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warnings of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." 68 P.S. § 477-3 (2008). The purpose of the statute, however, makes clear that Naugle is not meant to benefit from its protections. RULWA was enacted "to encourage owners of land to make land and water areas available *to the public* for recreational purposes by limiting their liability." 68 P.S. § 477-1 (emphasis added). *See also Friedman v. Grand Central Sanitation, Inc.*, 571 A.2d 373, 376-77 (Pa. 1990)(finding that § 477-3 "immunize[s] a landowner whose land is used for recreational purposes *by the public* without charge, whether or not he has invited or permitted the public to enter his land"). Because Naugle did not open his land to the public, he does not enjoy limited liability.[4]

The record indicates that the Naugle Farm was not open to the public. Louis Lepley, the caretaker of the Naugle Farm, testified that the Naugle Farm was closed to the public:

Q: So just so we're clear, he wouldn't just let anyone come on his property and use it?

A: No. No.

(Lepley Dep. 96:19-22.) The people on the property on July 20, 2003, were there by invitation. The only other event besides the family reunion that came to Lepley's mind was the Fourth of July, when

---

[4] Much of Naugle's brief is devoted to other RULWA requirements, such as the condition of the land and whether use of the land was compensated. The Court does not address these arguments because the unmet requirement of public use is sufficient to exclude Naugle from RULWA's protections.

3

Naugle would have family over. (Lepley Dep. 56:6-14.) Lepley himself would hold "a little get-together" once a year on the property. (Lepley Dep. 95:5-12.) Naugle let Lepley and his son, but *no one else*, hunt on the land. (Lepley Dep. 96:25-97:3.) As for visitors, Lepley testified that the "only ones" who would come to stay at the house were Naugle's grandson and son. (Lepley Dep. 94:16-23.) Naugle wanted no one on his property when he came to visit the farm. (Lepley Dep. 96:5-7 ("[H]e didn't like nothing going on when he come [sic] in.").)

The Court has not gleaned any hint of public use whatsover from the record. On the contrary, the undisputed facts suggest it was private land used for private purposes, such as this family reunion. Even if there could be any doubt on this point, the Court is obligated to draw inferences in favor of Routh. Since Naugle does not have the zero duty of care of RULWA-protected landowners, the Court turns to what duty of cared he owed.

### B. Duty of Care

Naugle next argues that, assuming he is not protected by RULWA (he is not), he did not breach his duty of care. Since there are disputed facts as to whether or not Naugle breached his duty of care, summary judgment is inappropriate.

Routh and Naugle describe different duties owed by land and property owners. Naugle's brief addresses only a landowner's liability for harm to business invitees[5] caused by a condition on the land. That duty is breached if the landowner: (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to invitees; and (2) should expect that they will not discover or realize the danger, or will fail to protect

---

[5] Routh has pleaded facts sufficient to establish that she was a business invitee, that is, "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Swift*, 690 A.2d at 722.

4

themselves against it; and (3) fails to exercise reasonable care to protect them against the danger. *Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997)(specifically addressing the duty a landowner owes to business invitees); Rest. (2d) of Torts § 343.[6]

Routh's brief in response does not respond to the duty identified in Naugle's brief and instead dwells on two duties, neither of which Naugle discusses. Routh argues that disputed facts exist as to whether Naugle breached (1) the duty of care of an owner of land and chattel to control the conduct of another using his property; and (2) the duty of a motor vehicle owner to inspect the motor vehicle before use. (Pl.'s Br. 13-16.)

The Court finds that there exist genuine issues of material fact as to whether Naugle breached the duties discussed by Routh. The Court refrains from addressing whether the duty discussed in Naugle's brief presents issues of fact because it is not clear that duty is still in the case. Although the complaint does allege dangerous conditions on the land, the parties' arguments with regard to summary judgment focus predominantly on the Gator (its condition, the girls' authority to use it, etc.) rather than on the physical condition of the land. Moreover, since a number of disputed facts surround the duties that Routh discusses, entry of summary judgment is already precluded.

### 1. Duty of an Owner of Land and Chattel to Control the Conduct of Another Using His Property

The Pennsylvania Supreme Court has outlined the duty a landowner owes to a third person conducting activity on his or her land:

---

[6] The Restatement clarifies the distinction between an invitee and a licensee. "[A] licensee enters [the land] with the understanding that he will take the land as the possessor himself uses it. Therefore such a licensee if entitled to expect only that he will be placed upon an equal footing with the possessor himself by an adequate disclosure of any dangerous conditions that are known to the possessor. On the other hand an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception." Rest. (2d) of Torts § 343.

5

> It is established in Pennsylvania that a possessor of land who permits a third person to conduct an activity on the land has a duty to exercise reasonable care to prevent that third person from creating an unreasonable risk of bodily harm to others, if the possessor knows or has reason to know that he has the ability to control the third person and that there is a need and opportunity to exercise control.

*Glass v. Freeman*, 249 A.2d 825 (Pa. 1968). There exist issues of disputed fact as to whether this duty was breached.

It is disputed, for example, whether the four girls had permission to use the Gator. There were statements made to an insurance company representative following the accident indicating that Naugle had told Elizabeth Adkins how to use the Gator, that he had given her permission to use it, and that he had the key. (Pl.'s Resp. Ex. 2.) In his 2005 statement, Naugle did not indicate that the Gator was off-limits for guests. (Pl.'s Resp. Ex. 4.) Naugle also was "sure" he told the adults that one of them should always be present when the Gator was used. (Pl.'s Resp. Ex. 4.) Routh testified that she and the girls had permission to operate the Gator but does not have personal knowledge of who granted them permission. (Routh Dep. 27-29.) Lepley's experience was that when the Gator was used by guests, it was Naugle who allowed it. (Lepley Dep. 35:13-15.) Lepley also testified that he "took it for granted" that reunion guests used the Gator. (*Id.* at 35:2-3.)

It is also disputed how the girls acquired the key to the vehicle. The vehicle does require a key to start. (Lepley Dep. 40:7-12.) Routh could not recall how the girls obtained a key to the vehicle. (Routh Dep. 29:13-15; 88:3-6.) Lepley testified that his usual routine of preparing the Gator for Naugle's visits (not in conjunction with a family reunion) was to "have the Gator sitting for him with the key in it, in good shape, tires pumped up and everything." (Lepley Dep. 30:12-14.) After Lepley had the Gator repaired following the accident, he "put the key in the house." (*Id.* at 40:4-6.)

Drawing all inferences in favor of Routh, there are material facts in dispute, such as whether Naugle was the individual who would grant permission for use of the Gator, whether he did so on July 20, 2003, and whether he gave the girls a key. These are facts for the jury that preclude summary judgment in favor of Naugle.

### 2. Duty to Inspect Vehicle

The Pennsylvania Supreme Court has also identified a motor vehicle owner's duty to inspect the vehicle including the tires:

> While blow-outs may result from untoward accidents for which no responsibility exists such as from spikes and other causes, where they result from defects in the tire arising from age or wear, there seems little doubt that responsibility should attend the dereliction of the vehicle owner in using such equipment, if the faults would be disclosed on reasonable inspection.

*Delair v. McAdoo*, 188 A.181, 183 (Pa. 1936). There exist disputed issues of fact as to whether Naugle fulfilled his responsibility to inspect the Gator tires.

After the accident, three Gator tires were flat, and one of those needed to be replaced. Lepley inspected the Gator after the accident and found two flat tires on the passenger side without any sort of slit or puncture, and one flat tire on the driver's side with a slit. (Lepley Dep. 37-38.) Lepley surmises the tire may have been sliced by "the rim jabbing in after it tipped over." (*Id.* at 38:1-3.) In a 2003 statement, Naugle indicated that roofing nails were subsequently found in two of the tires. (Pl.'s Resp. Ex. 3 at 2.) Lepley does not recall any roofing nails in the tires. (Lepley Dep. 81:14-17.)

When Naugle would come visit the property in the summertime, he would ask Lepley, his caretaker, to prepare the Gator for his arrival. (*Id.* at 33.) Naugle would ask Lepley to "make sure the Gator and everything's in good shape." (*Id.* at 30:3-5.) Lepley would "have the Gator sitting for him with the key in it, in good shape, tires pumped up and everything." (*Id.* at 30:12-14.) When

7

asked what Lepley was asked by Naugle to do in preparation for the reunion, he did not specifically mention the Gator. (*Id.* at 24-26.) Lepley testified that Naugle never asked him to ready the Gator for a family reunion. (*Id.* at 33-34.) Before the 2003 reunion, Lepley recalls Naugle asking him to get the Gator ready for Naugle only, "not for the party . . . because he [Naugle] was coming in early." (*Id.* at 41:22 - 42:2.)

Disputed facts regarding the duty to inspect include whether the nails were in the tires when Lepley filled them, and if so whether Lepley should have discovered them, and whether the tires should have been inspected closer to the time Routh used the Gator. Summary judgment is therefore inappropriate.

## V. CONCLUSION

Having determined that the RULWA does not afford Naugle protection from liability, the Court has found that genuine issues of material fact exist as to whether Naugle breached various duties of care. These facts are for the jury, and so summary judgment will be denied.

The following Order will issue.

In accordance with the preceding discussion, **IT IS HEREBY ORDERED** that Defendant Richard C. Naugle, Sr.'s Motion for Summary Judgment (Doc. No. 19) is **DENIED**.

BY THE COURT:

**March 29, 2010**

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

8