IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE ROUTH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-cv-316 |
| | ) | |
| v. | ) | |
| | ) | Judge Kim R. Gibson |
| MICHAEL OWENS et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Richard E. Stahl's Motion for Summary Judgment (Doc. No. 30). Plaintiff has filed a Response (Doc. No. 36). Defendant Naugle has filed a Response to Defendant Stahl's Concise Statement of Facts (Doc. No. 33.) Naugle's submission to the Court is not considered because Naugle is not an "opposing party" for purposes of LCvR 56.C because he is not directly involved in Plaintiff's claim against Stahl, despite the fact that Naugle's cross-claim against Stahl could be indirectly affected by the outcome of Stahl's motion for summary judgment. The Court looks only at whether disputed issues of fact exist as to Plaintiff's claim against Defendant Stahl. For the reasons set forth below, the Court will deny Defendant's motion for summary judgment.

### I. JURISDICTION

Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as Plaintiff is a resident of Ohio and Defendant Stahl is a resident of Pennsylvania, and the amount in controversy exceeds $75,000.00. Venue is proper because this case arose from events that occurred in Somerset County, in the Western District of Pennsylvania.

1

## II. FACTUAL BACKGROUND

Plaintiff Jamie Routh brought this action against Defendants Richard C. Naugle, Sr.[1], and Richard E. Stahl, after suffering injuries on the Naugle Farm during the 78th Heinrich Stahl Reunion after the vehicle (known as the "Gator") on which she was riding overturned. Routh alleges one count of negligence against each Defendant.[2] The Defendants have each brought a cross-claim against one another.

The following facts are undisputed and drawn from Stahl's Concise Statement of Material Facts ("Def.'s CSMF") that are not disputed by Plaintiff. Kristen[3] and Elizabeth Adkins, who were attending the Stahl Family Reunion with their mother, invited Jamie Routh to come with them. (Def.'s CSMF ¶ 1.) Defendant Richard E. Stahl served as president of the "Heinrich-Stahl" reunion. (Def.'s CSMF ¶ 4.) Naugle offered his farm for the reunion for no compensation.[4] (Def.'s CSMF ¶ 6.) Stahl did not deal directly with Naugle at all in organizing the reunion on Naugle's property. (Def.'s CSMF ¶ 6.) Stahl was aware there was a Gator on the property, but he did not discuss with Naugle the use of the Gator at the reunion. (Def.'s CSMF ¶ 8.) Stahl states that he did not expect the Gator to be available for use at the reunion. (Def.'s CSMF ¶ 9.)

The Naugle Farm covers 138 acres in Somerset County, Pennsylvania. (Reunion Invitation, Def.'s CSMF Ex. F.) The reunion was held from July 6 to July 20, 2003. (*Id.*) On average, about fifty people attend the family reunion. (Stahl Dep. 24:6-11.)

---

[1] Richard C. Naugle, Sr., is now deceased. His interests are represented by Michael A. Owens.

[2] This Court previously denied Defendant Naugle's motion for summary judgment.

[3] The Court uses the spelling of Ms. Adkins' first name most commonly used throughout the briefs, though her name appears as "Kristin" in her deposition.

[4] Naugle is related to the Stahl family through a common ancestor. (Stahl Dep. 18:18-20.)

2

Kristen Adkins found out about the Gator during a tour of the farm. (Def.'s CSMF ¶ 10.) Plaintiff believes the girls asked someone for permission to use the Gator but does not remember whom they asked. (Def.'s CSMF ¶ 12.) Operation of the Gator requires a key. (Def.'s CSMF ¶ 18.) Stahl arrived at the Naugle farm right around the time of the accident. (Def.'s CSMF ¶ 14.)

## III. STANDARD OF REVIEW

The Court will grant summary judgment to the moving party pursuant to Fed.R.Civ.P. 56(c) only where "it is demonstrated that there exists no genuine issue as to any material fact." *Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986)). All inferences are drawn in favor of the nonmoving party. *Troy Chem. Corp.*, 37 F.3d at 126. "An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Troy Chem. Corp.*, 37 F.3d at 126 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. DISCUSSION

The Complaint contains one count of negligence against Defendant Stahl that covers a host of allegations, including "[v]iolations of the applicable sections of the Restatement of Torts 2nd," though no sections are specifically enumerated. (Compl. ¶ 20(u).) Stahl's motion for summary judgment focuses on negligent entrustment and dangerous property conditions. Although the complaint does allege dangerous conditions on the land, Plaintiff's brief in opposition to summary judgment only discusses two Restatement sections, namely, § 323 (negligent performance of an undertaking) and § 308 (permitting improper persons to use things or engage in activities). It is not clear whether the issue of dangerous or defective conditions is still in the case, so the Court will address only the alleged breaches of duties enunciated in the Restatement sections identified by

3

Plaintiff.

A. **Negligent Performance of an Undertaking**

Plaintiff argues that Stahl negligently performed his role as president of the reunion. Section 323 of the Restatement (Second) of Torts provides that:

> One who undertakes, gratuitously . . . to render services to another which he should recognize as necessary for the protection of the other's person . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm . . . .

Plaintiff asserts that Stahl, by virtue of serving as president of the Heinrich Stahl Reunion, assumed responsibility for all the activities at the reunion. (Pl.'s Br. 6.) Stahl, on the other hand, downplays his role in the reunion. He calls the association "very informal." (Def.'s CSMF ¶ 4.) Plaintiff does not dispute that description (Pl.'s CSMF ¶ 4), although the reunion organizers include a president, a vice-president, a treasurer, and a secretary (Stahl Dep. 15), and invitations are sent out to all family members (Def.'s CSMF ¶ 4). The duties of the organizers are, however, disputed facts. (Pl.'s CSMF ¶ 5.) Stahl had a duty to exercise reasonable care in undertaking the role of president and whatever responsibilities that entailed. Those responsibilities remain disputed, and, as a result, summary judgment is inappropriate.

Disputed issues of fact exist as to Stahl's specific responsibilities at the reunion. Stahl insists that all he did at the reunion was "pass the hat" to collect contributions from attendees to cover the expenses involved in holding the reunion. (Def.'s CSMF ¶ 5.) However, Plaintiff asserts that Stahl's duties also extended to supervising the property and exercising authority over the use of the property, including the Gator. (Pl.'s CSMF ¶ 5.) Although Stahl was aware that there was a Gator

on Naugle's property, Stahl attempts to distance himself from the Gator by asserting he never discussed the Gator with Naugle:

> Stahl: I am familiar that there was a Gator on the property, yes.
> Q: Now, this Gator was — did you talk to Mr. Naugle about people at the reunion using the Gator?
> Stahl: No, not at all.
> Q: Had you ever had any discussions with Mr. Naugle about the Gator?
> Stahl: No. No.
> Q: In your role as the president, did you talk to people about who could or could not use this particular vehicle?
> Stahl: No. I mean, there was farm equipment. There's a tractor in the barn. There's farm equipment. It was not presumed that we would use anything that was the farm's equipment.

(Stahl Dep. 31:10-32:4.) Not discussing the Gator does not mean that no duty was breached if Stahl, in his role as president of the reunion, should have set in place safety precautions regarding the Gator. Whether not discussing the Gator with Naugle, and not defining rules for access to the Gator, constitute a failure to exercise reasonable care is a question for the jury. Summary judgment is therefore inappropriate.

### B. Negligent Entrustment

Plaintiff also argues that Stahl negligently entrusted the Gator to Plaintiff and her friends. The tort of negligent entrustment is defined in Restatement (Second) of Torts § 308 and provides as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

5

"[A] cause of action for negligent entrustment is based upon the permissive use of a thing . . . ." *Donegal Mutual Ins. Co. V. Fackler*, 835 A.2d 712, 720 (2003). There are disputed issues of fact surrounding who had access to and control over the Gator. Kristen Adkins does not recall "who we asked to ride the Gator, or who even asked to ride the Gator." (Adkins Dep. 18:4-5.) Stahl argues that he cannot possibly be liable for negligent entrustment because it is undisputed that Stahl was not anywhere near the Gator when the girls took it out and had an accident. (Def.'s Mot. 6.) He arrived at the Naugle farm on the day of the accident right around when the accident occurred. (Def.'s CSMF ¶ 14.) Moreover, Stahl asserts the Gator was not his to entrust to anyone because he did not have control over it. (Def.'s Mot. 6.) Plaintiff disputes this fact, arguing that even if Stahl was not the one who granted the girls permission to take out the Gator, he still could have had control over it by virtue of his responsibilities at the reunion. Plaintiff asserts that as a reunion organizer, Stahl had "duties as the possessor of property throughout the weeks of camping ending with the dinner as well as the authorization to use the John Deere Gator in accordance with the instructions of [Naugle]." (Pl.'s CSMF ¶ 5.) There exists a genuine issue of material fact with respect to Stahl's control over the Gator. This question must go to the jury.

Finally, an initial requirement for a finding of liability under a negligent entrustment theory is a finding that the entrustee was causally negligent. *Christiansen v. Silfies*, 667 A.2d 396, 400 (Pa. Super. Ct. 1995) ("In several decisions, this court has held that liability for negligent entrustment does not attach to the entrustor until the entrustee uses the entrusted instrumentality negligently, and is found *causally responsible* for ensuing harm.") (emphasis in original). The motion for summary judgment and Plaintiff's response are silent on this threshold requirement. However, the Court will deny summary judgment because of the existence of disputed facts, even though the entrustee's

negligence has not been discussed by either party.

## V. CONCLUSION

When all reasonable inferences are drawn in favor of Plaintiff, there are material facts in dispute, and therefore entry of summary judgment is inappropriate. Genuine issues of material fact exist as to whether Stahl breached various duties of care. These facts are for the jury, and so summary judgment will be denied.

The following Order will issue.

In accordance with the preceding discussion, **IT IS HEREBY ORDERED** that Defendant Richard E. Stahl's Motion for Summary Judgment (Doc. No. 30) is **DENIED**.

**BY THE COURT:**

June 4, 2010

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**